UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ X
RONALD REY

                               Plaintiff,

-against-                                         **COMPLAINT**

THE CITY OF NEW YORK, a municipal entity; T. CARAMORE
(Shield #21710) and New York City Police Officers JOHN DOEs
1-8, all individually and in their capacities as agents and/or
employees of the New York City Police Department and the
City of New York,
                               Defendants.
------------------------------------------------------------------------ X

       Plaintiff Ronald Rey, by his attorneys, Beldock Levine & Hoffman LLP, as and for his complaint against the City of New York and all defendant parties, alleges as follows:

## PRELIMINARY STATEMENT

1.    This is a civil rights action in which the plaintiff, RONALD REY, seeks relief for defendants' violations, under color of state law, of his rights, privileges and immunities secured by the 42 U.S.C. §1983; the Fourth, Fifth and Fourteenth Amendments to the United States Constitution; and the Constitution and laws of the State of New York.

2.    Defendants, the CITY OF NEW YORK and New York City Police Officers T. CARAMORE (Shield #21710)[1] and JOHN DOEs 1-8; individually and, as the case may be, in their official capacities, jointly and severally, did cause plaintiff RONALD REY to be subject to, *inter alia*, an unreasonable search, excessive and unreasonable force, false

---

[1] According to the NYPD Officer T. Caramore is currently either on extended sick leave or retired.

1

arrest and imprisonment, and malicious prosecution, causing him loss of liberty and physical and mental injury.

3. Plaintiff seeks (i) compensatory damages for physical injury, psychological and emotional distress, and other financial loss caused by the illegal actions of the defendants; (ii) punitive damages to deter such intentional or reckless deviations from well-settled constitutional law; and (iii) such other and further relief, including costs and attorneys fees, as this Court deems equitable and just.

## JURISDICTION

4. Jurisdiction is conferred upon this Court by 28 U.S.C. §§1331 and 1343(3) and (4), as this action seeks redress for the violation of plaintiffs' constitutional and civil rights.

5. Plaintiffs further invoke this Court's supplemental jurisdiction, pursuant to 28 U.S.C. § 1367(a), over any and all state constitutional and state law claims that are so related to the claims within the original jurisdiction of this Court that they form part of the same case or controversy.

## VENUE

6. Venue is proper in the United States District Court for the Southern District of New York pursuant to 28 U.S.C. §1391(b)(2), as this is the judicial district in which the events giving rise to the plaintiff's claims took place.

## JURY DEMAND

7. Plaintiff demands a trial by jury in this action on each and every one of his claims for which jury trial is legally available.

## THE PARTIES

8. Plaintiff, RONALD REY, is a citizen of the United States, who is and was at all times relevant to this complaint a resident of the City of New York, County of New York, State of New York.

9. Defendant CITY OF NEW YORK ("the CITY") is a municipal entity created and authorized under the laws of the State of New York. It is authorized by law to maintain a police department, and does maintain the New York City Police Department (NYPD), which acts as its agent in the area of law enforcement and for which it is ultimately responsible. The CITY assumes the risks incidental to the maintenance of a police force and the employment of police officers.

10. Defendants T. CARAMORE (Shield #21710) and New York City Police Officers JOHN DOEs 1-8 are, or were at the times relevant to this complaint, NYPD Command and Police Officers employed by the NYPD who were involved in the arrest of plaintiff and all of the actions and conduct associated therewith, including, *inter alia*, arresting plaintiff without probable cause, using excessive force, causing injury to plaintiff, and malicious prosecution. The JOHN DOE defendants include individuals who assisted and/or conspired to and/or acted in concert and/or did engage in the violation's of plaintiffs' rights described herein, or who failed to protect the plaintiffs from violations of their constitutional rights.

11. At all times relevant herein, defendants T. CARAMORE (Shield #21710) and NYPD Officers JOHN DOEs 1-8 have acted under color of state law in the course and scope of their duties and functions as agents, employees, and officers of defendant CITY and/or the NYPD in engaging in the conduct described herein. At all times relevant herein,

           defendants have acted for and on behalf of defendant CITY and/or the NYPD with the power and authority vested in them as officers, agents and employees of defendant CITY and/or the NYPD and incidental to the lawful pursuit of their duties as officers, employees and agents defendant CITY and/or the NYPD.

12. At the times relevant herein, defendants T. CARAMORE (Shield #21710) and New York City Police Officers JOHN DOEs 1-8 violated clearly established rights and standards under the Fourth, Fifth, and Fourteenth Amendments of the United States Constitution of which a reasonable police officer and/or public official under their respective circumstances would have known.

## STATEMENT OF FACTS

13. Plaintiff RONALD REY ("Mr. Rey" or "Plaintiff") was walking on the sidewalk on 7th Avenue outside of Madison Square Garden on or about April 22, 2009.

14. On that date the New York Rangers were scheduled to play the Washington Capitals at Madison Square Garden in game four of the Eastern Conference Quarterfinal Round of the 2009.

15. Mr. Rey was hoping to attend the Rangers game, and was planning to wait outside of Madison Square Garden for his friend. Mr. Rey's friend had a ticket to the game and had told Mr. Rey earlier in the day that he might have an extra ticket that Mr. Rey could use that night.

16. As Mr. Rey approached Madison Square Garden on the sidewalk, several youths approached him. The youths asked Mr. Rey, in sum and substance, if he knew anyone selling tickets. Mr. Rey replied, in sum and substance, that he did not know anyone selling tickets and was hoping to get an extra ticket himself.

17. Mr. Rey then walked up the steps outside of Madison Square Garden and stood on the raised sidewalk/entrance area outside of Madison Square Garden to wait for his friend.

18. As Mr. Rey was waiting, a man approached him and asked Mr. Rey, in sum and substance, whether he had tickets. Mr. Rey responded, in sum and substance, that he did not have any tickets. The man then walked away.

19. Four undercover police officers in plain clothes then approached Mr. Rey. Three of the four officers walked up to Mr. Rey, while one of the four officers remained a few feet away.

20. One of the three officers who walked up to Mr. Rey, who later became Mr. Rey's arresting officer, asked Mr. Rey what he was doing.

21. According to Mr. Rey's Criminal Information Record and Management System (CRIMS) printout, his arresting officer was T. CARAMORE (Shield #21710).

22. Mr. Rey told the arresting officer, who upon information and belief was Officer T. CARAMORE (Shield #21710), that Mr. Rey was waiting for his friend.

23. Officer CARAMORE then said, in sum and substance, "we hear that you are trying to sell tickets."

24. Mr. Rey told Officer CARAMORE and the other officers, in sum and substance, that he was not selling tickets and that he did not have any tickets to sell.

25. Officer CARAMORE then questioned Mr. Rey regarding the conversation Mr. Rey had with several youths on the sidewalk. Mr. Rey explained to the officers, in sum and substance, that the youths had asked him whether he was selling tickets, and that Mr. Rey had told the youths that he was not selling tickets and that he was looking for an extra ticket himself.

26. One of the three officers then stated to Mr. Rey "we're going to search you."

27. When the officer stated "we're going to search you," it was stated as a command, not a question.

28. The officers then searched Mr. Rey's person.

29. During the search officers emptied Mr. Rey's pockets and threw some of the items in Mr. Rey's pockets onto the ground.

30. When Mr. Rey asked the officers why they were throwing his items on the ground, an officer responded "don't worry about it."

31. The officers did not find any tickets of any kind in the course of searching Mr. Rey.

32. After the search, Officer CARAMORE and another officer stepped away from Mr. Rey for a moment to confer with each other. During this time the third officer remained with Mr. Rey.

33. After conferring with each other, the two officers returned, and Officer CARAMORE told Mr. Rey to turn around.

34. Mr. Rey asked, in sum and substance, why he had to turn around, and why the officers were trying to arrest him.

35. Officer CARAMORE responded, in sum and substance, "Shut the fuck up and turn around."

36. Mr. Rey complied with the officer's order by turning around, placing his hands behind his back, and allowing the officers to place handcuffs on him.

37. Mr. Rey continued to verbally protest his arrest, informing officers, in sum and substance, that he was not selling tickets and that he had family members on the police force who could vouch for his good character.

38. Officer CARAMORE responded, in sum and substance, "I don't give a fuck who you know, get fucking moving." He then led Mr. Rey by the arm to a police car.

39. As the officers were walking Mr. Rey to the police car, an African American individual unknown to Mr. Rey stated to the police, in sum and substance, "No, he's not one of those guys." Mr. Rey understood this to mean that he was not a person who had been selling tickets outside of Madison Square Garden.

40. In response, the arresting officer called the unknown individual by name and stated, in sum or substance, "shut the fuck up, mind your business."

41. Police officers led Mr. Rey to an area near a number of police officers and at least one police vehicle, where Mr. Rey stood and waited, still in handcuffs.

42. At some point the arresting officer led Mr. Rey to a marked police car, opened the back door, and told Mr. Rey to "get in."

43. Mr. Rey began to bend over to get in, while explaining to the arresting officer, in sum and substance, that he had back trouble and had to bend over slowly.

44. The officer responded by forcefully shoving Mr. Rey into the car.

45. Mr. Rey landed with his back toward the seat on top of his hands, jamming his thumb.

46. The arresting officer then kicked Mr. Rey with his foot three times on the right side.

47. After being shoved into the car Mr. Rey also experienced back pain.

48. Mr. Rey was then driven by a uniformed officer to a police precinct.

49. While at the precinct, the pain in Mr. Rey's thumb and his back increased.

50. Mr. Rey asked several officers to be taken to the hospital.

51. A uniformed officer told Mr. Rey that he would have to deal with his arresting officer regarding his request to go to the hospital.

52. When he next saw Officer CARAMORE, Mr. Rey asked Officer CARAMORE to take him to the hospital. Officer CARAMORE responded by telling Mr. Rey, in sum and substance, that Mr. Rey could not go to the hospital until he was fingerprinted and processed.

53. Mr. Rey continued to complain verbally about the pain in his thumb and back until a uniformed officer agreed to take him to the hospital.

54. At some point Mr. Rey was taken to an ambulance by two uniformed officers.

55. Prior to being taken to the ambulance Mr. Rey was placed in shackles and handcuffs.

56. When he arrived at the back of the ambulance Mr. Rey had difficulty stepping up into the ambulance due to the fact that he was in shackles and was experiencing back pain. When Mr. Rey asked the officers for assistance, he was told that he would have to get into the ambulance himself. Mr. Rey had difficulty getting into the ambulance and experienced pain and humiliation.

57. Mr. Rey was taken to Bellevue Hospital, where doctors put a quick dry cast on Mr. Rey's thumb.

58. Doctors at the hospital informed Mr. Rey that reflex testing indicated nerve damage to his thumb.

59. Doctors at the hospital also provided Mr. Rey with a prescription for pain medicine for his back pain.

60. Mr. Rey was transported from the hospital to central booking and was later seen by a Judge. Mr. Rey was released but was required to return to court on a future date.

61. Mr. Rey returned to court on three to four occasions in relation to criminal charges arising from his arrest.

62. Mr. Rey's case was dismissed at his final court appearance.

63. Prior to his arrest Mr. Rey had been diagnosed with damage to his sciatic nerve and had experienced chronic back pain.

64. Since his arrest, Mr. Rey's back pain has increased overall.

65. Prior to his arrest Mr. Rey had been able to stand for long period of time without experiencing back pain.

66. Since his arrest, Mr. Rey is no longer able to stand for long periods of time without experiencing back pain.

67. Prior to his arrest Mr. Rey was able to sleep through the night when lying on either side of his body.

68. Since his arrest, Mr. Rey must sleep on one side of his body only to avoid back pain.

69. Since his arrest, Mr. Rey is required to sleep in a recliner rather than a bed more often to avoid being awakened by back pain.

70. Since his arrest, Mr. Rey has sought out massage therapy for his back pain.

71. Since his arrest, Mr. Rey has decreased strength in his thumb.

## FIRST CAUSE OF ACTION
**Violation of Civil Rights Pursuant to Title 42.U.S.C. §1983**
**(General Allegations, Fourth, Fifth and Fourteenth Amendments)**

72. Plaintiff realleges and incorporates by reference each and every allegation set forth in the foregoing paragraphs as if fully set forth herein.

73. In committing the acts and omissions complained of herein defendants acted under color of state law to deprive plaintiff of certain constitutionally protected rights under the Fourth, Fifth and Fourteenth Amendments to the United States Constitution, including, but not limited to:

9

a. the right to be free from unreasonable searches of his person,

b. the right to be free from unreasonable seizure of his person, including excessive force,

c. the right to be free from arrest without probable cause,

d. The right to be free from false imprisonment, that being wrongful detention without good faith, reasonable suspicion or legal justification, and of which detention plaintiff was aware and to which he did not consent,

e. The right to be free from the lodging of false charges against him by police officers,

f. The right to be free from malicious prosecution by police officers, that being prosecution without probable cause that is instituted with malice and that ultimately terminated in plaintiff's favor,

g. The right to be free from abuse of process,

h. The right to be free from deprivation of liberty without due process of law, and

i. The right to equal protection, privileges and immunities under the laws.

74. As a direct and proximate result of defendants' deprivation of plaintiff's constitutional rights, plaintiff suffered the injuries and damages set forth above.

75. The conduct of defendants was willful, malicious, oppressive and/or reckless, and was of such a nature that punitive damages should be imposed.

## SECOND CAUSE OF ACTION
### Failure to Intervene--Fourth Amendment--42 U.S.C. §1983

76. Plaintiff realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

77. Members of the NYPD have an affirmative duty to assess the constitutionality of interactions between their fellow members of service and civilians and to intervene where

they observe another member of the police department employing unjustified and excessive force against a civilian or falsely arresting a civilian.

78. Defendants T. CARAMORE and JOHN DOES were present on April 22, 2009 on the sidewalk outside of Madison Square Garden and in the vicinity of plaintiff's arrest and witnessed other officers, *inter alia*,

   a. Search plaintiff without cause,

   b. Falsely arrest plaintiff, and

   c. Use unlawful force against plaintiff, including pushing plaintiff into a police car and kicking him three times.

79. The search of plaintiff's person was clearly made without probable cause, reasonable articulable suspicion, or any other legal justification, yet defendants failed to take any action or make any effort to intervene, halt or protect plaintiffs from the illegal search.

80. Plaintiff's arrest was clearly made without probable cause or other legal justification, yet defendants failed to take any action or make any effort to intervene, halt or protect plaintiffs from being unlawfully and wrongfully arrested.

81. Officer CARAMORE'S use of force against plaintiff was obviously excessive and unjustified under the circumstances yet defendants failed to take any action or make any effort to intervene, halt or protect plaintiffs from being physically brutalized by Officer CARAMORE.

82. Defendants' violation of plaintiffs' constitutional rights by failing to intervene in the illegal search of plaintiff, his false arrest, or Defendant CARAMORE'S clearly unconstitutional use of force resulted in the injuries and damages set forth above.

11

## THIRD CAUSE OF ACTION
### Respondeat Superior

83. Plaintiffs reallege and incorporate by reference the allegations set forth in the foregoing paragraphs if fully set forth herein.

84. Defendant CITY OF NEW YORK is liable for the actions of the individual defendants under the doctrine of *respondeat superior*.

## DEMAND FOR RELIEF

**WHEREFORE**, plaintiff demands the following relief jointly and severally against all defendants:

(a) compensatory damages for physical and emotional injuries; loss of property, financial loss; and injuries to reputation suffered by plaintiff by reason of defendants' unlawful and unjustified conduct, in an amount just and reasonable and in conformity with the evidence at trial;

(b) punitive damages against the individual defendants to the extent allowable by law;

(c) attorneys fees;

(d) the costs and disbursements of this action; and

(e) such other and further relief as appears just and proper.

Dated: New York, New York
April 18, 2012

BELDOCK LEVINE & HOFFMAN LLP

By: *(signature)*

Jonathan Moore
99 Park Avenue - Suite 1600
New York, New York 10016
(212) 490-0400

Attorneys for Ronald Rey